DECISION
Defendant Joseph Mollicone, Jr. moves for a reduction of sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure.
The defendant was originally charged by a Grand Jury with forty-seven various counts and was eventually convicted on twenty-six of them which arose out of his activities as President of Heritage Loan and Investment Company. On April 23, 1993, the jury returned verdicts of guilty on five counts of embezzlement, nineteen counts of false (bank) entries and two counts of conspiracy. The Court on July 28, 1993, sentenced the defendant as follows:
1. Five counts of embezzlement — 20 years — 15 years to serve with 5 years suspended and probation, restitution of $12,000,000, concurrent;
2. Nineteen counts of false (bank) entries — 20 years — 15 years to serve with 5 years suspended and probation, $380,000 in fines, concurrent with each other but consecutive to the sentences for embezzlement;
3. Two counts of conspiracy — 10 years to serve, $40,000 in fines, concurrent with the sentences for embezzlement and false (bank) entries.
The sentences in the aggregate resulted in 40 years, 30 years to serve, 10 years suspended and probation, $420,000 in fines, and $12,000,000 in restitution.
The defendant duly filed an appeal to the Rhode Island Supreme Court which affirmed the convictions and dismissed the appeal. State v. Joseph Mollicone, Jr., 654 A.2d 311 (R.I. 1995).
On April 25, 1995, after the dismissal of his appeal, the defendant filed the motion to reduce which is the subject of the Court's consideration.
Defendant's motion is based upon language employed by the Court during his sentencing which he seizes upon to advance his argument for reduction of the sentence he characterizes as Draconian. At the sentencing the court stated:
 "He professes, as reported, to want to set the record straight and has a desire that the whole matter come to light and his responsibility be properly apportioned. Who better than the Defendant, if indeed, such is his desire? Who better than the President of Heritage and a member of the inner financial circle, closely bound by professional business and social ties?
 On close scrutiny, the Defendant's words ring hollow, as do those expressed here to me today. And they will continue to ring hollow until he follows them up with actions by cooperating fully with authorities. He, himself, holds the key to the ultimate apportionment of blame if, indeed, he was not alone in his actions, as he asserts."
Relying upon the words as implying that the Court would consider a reduction of sentence if he cooperated, defendant embarked upon a course of conduct to that end.
He summarizes for the Court various activities he engaged in to assist law enforcement even though he placed himself at risk of physical harm. Most of his cooperation, except for the so-called Fleet Bank Loan, off line loans about which he testified and meetings with the Heritage Receiver, was not related to the failure of Heritage. His cooperation on those unrelated matters, was given after he received immunity from prosecution, a prudent precondition to avoid further legal jeopardy with which the Court finds no fault.
The Court's comments at sentencing were occasioned by the defendant's stated desire to set the record straight and have his responsibility properly apportioned as it related to Heritage. To the Court, this translates into information relating to individuals, i.e., directors, officers and/or employees, who were complicit in defendant's activities which resulted in the eventual demise of Heritage.
The Court acknowledges, as does the state, that defendant has cooperated with various governmental and legal entities in their attempts to recoup moneys resulting from the Heritage collapse and the credit union crises providing "useful" and "significant" information. This, however, is a far cry from defendant's professed desire to set the record straight and apportion blame for Heritage which he has not even come close to achieving.
The Court is of the opinion that whatever benefits ought to flow to the defendant from his documented cooperation do not support his motion to reduce, but rather, are more properly left to the consideration of the parole board at the appropriate time. Counsel for the defendant suggests that the sentence imposed upon him in 1993 was too harsh and unprecedented. He attempts to compare two other specific breach of trust cases in Rhode Island resulting in lesser sentences. Having so argued, counsel then recognizes that the gravity of the wrong committed by this defendant had a greater impact than the average case. Defense counsel cannot on the one hand concede that his client's criminal activity had greater than average impact and then decry the Court's sentence as being Draconian in the face of the unprecedented nature of defendant's actions which defy comparison.
The Court is not persuaded by defendant's arguments and is of the opinion now, as in 1993, that the consecutive sentences were appropriate and well within the Court's discretion to impose given the number and magnitude of the crimes of which defendant was convicted.
For the foregoing reasons, defendant's motion to reduce is denied.